IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| John Steven Sims, | ) | C/A No. 0:14-1663-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, John Steven Sims, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**SOCIAL SECURITY DISABILITY GENERALLY**

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform his past relevant work; and

(5)     whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



## ADMINISTRATIVE PROCEEDINGS

In June 2010, Sims applied for DIB and SSI, alleging disability beginning February 27, 2009. Sims's applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 15, 2012, at which Sims, who was represented by Dale E. Van Slambrook, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on July 23, 2012 concluding that Sims was not disabled. (Tr. 14-27.)

Sims was born in 1964 and was forty-four years old at the time of his alleged disability onset date. (Tr. 176.) He has a high school education and has past relevant work experience as a construction worker and a maintenance worker. (Tr. 180-82.) Sims alleged disability due to "vitiligo, osteoarthritis, high cholesterol, [and] vision/dizziness." (Tr. 181.)

In applying the five-step sequential process, the ALJ found that Sims had not engaged in substantial gainful activity since February 27, 2009—his alleged onset date. The ALJ also determined that Sims's back disorders, osteoarthritis, left shoulder impingement, borderline intellectual functioning, affective disorder, anxiety disorder, and chronic planter fasciitis were severe impairments. However, the ALJ found that Sims did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Sims retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for occasional postural movements and occasional overhead reaching with the left upper extremity. He is further limited to simple routine repetitive tasks in an environment that does not require on-going interaction with the public.



(Tr. 19.)  The ALJ found that Sims was unable to perform any past relevant work and that, considering Sims's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Sims could perform.  Therefore, the ALJ found that Sims was not disabled from February 27, 2009 through the date of his decision.

The Appeals Council denied Sims's request for review on February 27, 2014, making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-4.)  This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.



## ISSUES

Sims raises the following issues for this judicial review:

I.      The ALJ's listing analysis is not supported by substantial evidence; and

II.     The ALJ's credibility analysis is not supported by substantial evidence.

(Pl.'s Br., ECF No. 18.)

## DISCUSSION

### A.    Listing Analysis

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. §§ 404.1508, 416.908. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. §§ 404.1526(a), 416.926(a).

Sims argues that the ALJ erred in finding that he did not meet Listing 12.05(C) for Mental Retardation. That Listing, as of the date of the ALJ's decision, provided:

12.05 Mental Retardation:[2]  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . . .

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function . . . .

20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 12.05.

The United States Court of Appeals for the Fourth Circuit has made clear that in determining whether a claimant meets Listing 12.05, the ALJ must first find that the claimant satisfies the introductory paragraph to the Listing by finding that he has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22.  Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012).  Next, the Listing requires a claimant to satisfy one of four additional requirements, categorized in the Listing as Requirements A-D.  Here, as in Hancock, Requirement C is at issue, requiring an IQ score of 60-70, which the Fourth Circuit describes as Prong 2, as well as requiring a "physical or mental impairment imposing an additional and significant work-related limitation of function," identified as Prong 3.  Id.

### 1.    Deficits in Adaptive Functioning

In addressing Listing 12.05(C), the ALJ found as follows:

---

[2]  The court notes that effective September 3, 2013—subsequent to the date of the ALJ's decision—the Social Security Administration replaced the term "Mental Retardation" with "Intellectual Disability" in Listing 12.05.  See Change in Terminology:  "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013).  However, the substance of the Listing has not changed.



> [T]he "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. In a consultative examination dated July 2011, the WAIS-IV was administered and the claimant obtained the following index scores: verbal comprehension, 66, perceptual reasoning, 71, working memory, 71, processing speed, 68, with a full scale IQ score of 63. (Exhibit10F) Despite these test scores, the claimant's ability to obtain a driver's license, obtain a GED, read the paper, his history of maintaining jobs for years at a time, and his extensive activities of daily living, support a finding that the claimant does not exhibit deficits in adaptive functioning that would support disability under Listing 12.05C, and therefore the undersigned finds that the criteria of "paragraph C" are not met.

(Tr. 19.) As an initial matter, the parties disagree as to the basis of the ALJ's finding that Sims did not meet Listing 12.05(C). The Commissioner argues that the ALJ found that Sims's IQ scores were not valid and that Sims did not exhibit deficits in adaptive functioning. Sims argues that the ALJ accepted Sims's IQ scores but found he did not meet Listing 12.05(C) based solely on Sims's failure to exhibit deficits in adaptive functioning. Reading the ALJ's finding as a whole, the court agrees with Sims that the ALJ found that Sims did not meet Listing 12.05(C) solely because he did not exhibit deficits in adaptive functioning. Sims challenges this finding.

Cases interpreting Listing 12.05(C) show that the issue of whether a claimant manifested deficits in adaptive functioning during the developmental period is a fact-specific inquiry with few bright-line rules. Accord Salmons v. Astrue, No. 5:10CV195-RLV, 2012 WL 1884485, at *5 (W.D.N.C. May 23, 2012). However, the Fourth Circuit has provided instruction on the factors that play into this determination, finding that deficits in adaptive functioning "can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012) (citing Atkins v. Virginia, 536 U.S. 304, 309 n.3

(2002)).  Further, a low IQ score alone does not demonstrate deficits in adaptive functioning.  Justice v. Barnhart, 431 F. Supp. 2d 617, 620 (W.D. Va. 2006)

Citing achievement testing that indicates Sims spells and performs mathematical computation on a third-grade level and reads on a fourth-grade level, Sims argues that his poor academic achievement is indicative of deficits in adaptive functioning.  See Salmons, 2012 WL 1884485, at *7 ("[F]unctional academic skills is the primary measure of deficits of adaptive functioning before age 22."); see also Conyers v. Astrue, No. 4:11-CV-00037-D, 2012 WL 3282329, at *8-9 (E.D.N.C. June 29, 2012) (Report and Recommendation), adopted in 2012 WL 3283285 (E.D.N.C. Aug. 10, 2012) (discussing the claimant's school history).  The ALJ acknowledged this finding in his opinion and also noted that Sims reported that he received special education classes in elementary school but in high school he was in mainstream classes.  (Tr. 22; see also Tr. 354.)

Sims also argues that the ALJ's findings that Sims had moderate difficulties in concentration, persistence, and pace and in social functioning indicate that Sims had difficulties in social/interpersonal skills, work, and leisure.  However, the court finds that the ALJ's findings in the broad functional areas of mild or moderate restrictions do not render the ALJ's finding that Sims did not exhibit deficits in adaptive functioning unsupported by substantial evidence.   Compare 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(D) with § 12.05(C); see, e.g., Hinkle v. Comm'r of Soc. Sec., No. 3:14-CV-41, 2015 WL 2170034, at *6 (N.D. W. Va. May 8, 2015) (stating that the ALJ's conclusions that the Plaintiff's mental impairments imposed a mild restriction on her daily living and moderate difficulties with social functioning are consistent with his review and determination that Plaintiff failed to make the requisite showing of deficits in adaptive functioning); but see Harris v. Colvin, No. 2:13-28109, 2015 WL 268246, at *15 (S.D. W. Va. Jan. 20, 2015) (stating that "a

finding of moderate deficits in adaptive functioning in the paragraph D criteria would arguably satisfy the diagnostic description").

Sims argues that the ALJ erred in considering Sims's work history in determining whether the section 12.05C criteria are met. However, work history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, Luckey v. U.S. Department of Health and Human Services, 890 F.2d 666, 669 (4th Cir. 1989), can be relevant in determining whether a claimant manifested deficits in adaptive functioning prior to age 22. Hancock, 667 F.3d at 475-76 (concluding that the ALJ's finding that the claimant did not manifest requisite deficit in adaptive functioning was supported by substantial evidence where the ALJ considered, among many other factors, that the claimant had worked several jobs); Harts v. Astrue, C/A No. 0:10-1893-CMC-PJG, 2012 WL 529982, at *6 n.3 (D.S.C. Jan. 30, 2012) (distinguishing Luckey because the ALJ used the claimant's work history as only one factor to support his finding of no significant deficits in adaptive functioning) (Report and Recommendation), adopted and incorporated in 2012 WL 529980 (D.S.C. Feb. 17, 2012).

Finally, Sims points out that while Sims testified he read the paper, the evidence shows he reads on a fourth-grade level. Sims also argues that although he obtained his driver's license, he did not do so until he was twenty-eight, he obtained it to drive equipment for one of his prior jobs, and he rarely drives the family car. In this case, the ALJ's decision clearly reflects that he was aware of and considered all of this information in reviewing Sims's claim for disability. See generally Hancock, 667 F.3d at 476 & n.3 (affirming ALJ's consideration of the claimant's ability to perform tasks such as shopping, paying bills, and making change); Salmons, 2012 WL 1884485, at *7 (discussing claimant's inability to do household chores, cook, and drive).

PJG

Thus, applying the relevant factors to the record presented, the court finds that Sims has failed to show that the ALJ's conclusion that Sims did not meet the Prong 1 requirements was unsupported by substantial evidence or controlled by an error of law. Specifically discussing Listing 12.05(C), the ALJ considered Sims's functional academic skills, noting that Sims obtained his GED. (Tr. 19.) The ALJ further noted that Sims reported to Dr. Cashton Spivey that "he successfully completed high school and received a diploma, and that in elementary school he was in special education classes, but was in mainstream classes in high school." (Tr. 22; see also Tr. 354.) Although Sims points out that he reads on a fourth-grade level, the ALJ acknowledged that Sims testified at the hearing that he reads the newspaper every day and reads books on his Nook (an e-book reader) and that Sims reported to two doctors in 2011 that he reads often. (Tr. 20, 21; see also Tr. 19.)

Regarding social and interpersonal skills, the ALJ recognized moderate difficulties in social functioning, but observed that Sims spends time with his family, attends church on occasion, and shops in the grocery store with his wife. (Tr. 18.) The ALJ also observed that Dr. R. Allen Lish, a licensed psychologist and consultative examiner, opined that Sims's social functioning was normal and in line with his history, noting that Sims spends time with family when he can, and that Sims's social adeptness and self-confidence appeared to be within normal range. (Tr. 22; see also Tr. 351.)

In finding that Sims had mild restriction in activities of daily living, the ALJ noted that Sims "testified that he can handle his own bathing and grooming; prepare simple meals with a microwave; has a drivers license but rarely drives; goes to church on occasion; and goes to the grocery store with his wife." (Tr. 18.) The ALJ also observed that Sims reported to Dr. Lish that "he was able to take care of his daily living needs in a timely manner and needed no assistance, but that his wife handled the finances and provided organizational support." (Tr. 22; see also Tr. 351.) In the area of self-

direction, the ALJ recognized that although Sims rarely drives, he has a driver's license. As stated above, in the area of work, the ALJ considered Sims's work history.

Because the ALJ has considered pertinent evidence and weighed appropriate factors in analyzing whether Sims met Listing 12.05(C), the court cannot say that the ALJ's determination that Sims did not demonstrate the requisite deficits in adaptive functioning was not supported by substantial evidence or was controlled by error of law.[3]  The fact that Sims can point to other evidence that supports his position does not render the ALJ's decision unsupported. See Hancock, 667 F.3d at 476.  In particular, in this case, it is clear that the ALJ was aware of the additional information that Sims argues in support of his position that the ALJ overstated or misrepresented the evidence in the section discussing Listing 12.05(C).  For example, the ALJ explicitly mentioned elsewhere in the opinion the fact that Sims did not obtain his license until he was twenty-eight and rarely drove.  Essentially, Sims is challenging the weight the ALJ gave to much of the evidence in this case when this evidence was clearly before and considered by the ALJ.  Courts are "not at liberty to 'reweigh conflicting evidence . . . or substitute our judgment for that of the [ALJ].' " Hancock, 667 F.3d at 476 (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) and citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ("We must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence.")).  Therefore, remand is not warranted on this ground.

_____

[3] To the extent that Sims argues the ALJ erred because no state agency consultant specifically considered whether Sims met Listing 12.05, the court disagrees with this statement.  Dr. Kathleen Broughan completed a psychiatric review technique in which she specifically found that Sims's performance on the IQ test was an underestimate of his true level of cognitive ability.  Thus, she appears to not find that Sims has a medically determinable impairment of mental retardation.  (See Tr. 379.)

### 2. Combination of Impairments

Sims next argues that the ALJ erred in failing to consider his impairments in combination. When a claimant has more than one impairment, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to be the basis of eligibility under the law. 20 C.F.R. §§ 404.1523, 416.923. Further, in Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit explained:

> [A] failure to establish disability under the listings by reference to a single, separate impairment does not prevent a disability award. It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity. In recognizing this principle, this Court has on numerous occasions held that in evaluating the effect[] of various impairments upon a disability benefit claimant, the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them. . . . As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.

Id. at 49-50 (internal citations omitted). However, "the adequacy requirement of Walker is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments." Brown v. Astrue, C/A No. 0:10-cv-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012) (citing Green v. Chater, 64 F.3d 657, 1995 WL 478032, at *3 (4th Cir. 1995)).

Sims argues that the ALJ failed to discuss his impairments in combination. Further, Sims argues that his impairments, taken together, are of equal medical significance to any part of Listing 12.05(C) that he may not have satisfied. Specifically, Sims points to radiographic evidence of his lumbar spine that he alleges shows "congenital spinal stenosis and neural contact at multiple levels, worst at L3-4 through L5-S1" and "contact of transitioning L4 nerve roots; contact of transitioning L5 nerve roots, and contact of the left S1 nerve root." (Pl.'s Br. at 18-19, ECF No. 18 at 18-19)



(citing Tr. 415). Sims contends that these findings are a requirement of Listing 1.04,[4] making them of equal medical significance to deficits in adaptive functioning in Listing 12.05(C).

Contrary to Sims's arguments, the court finds that during the course of the ALJ's opinion, the ALJ sufficiently discussed Sims's alleged impairments and limitations to demonstrate that he considered Sims's impairments in combination. For example, in assessing Sims's residual functional capacity considering Sims's physical and mental impairments, the ALJ limited him to less than the full range of light work, restricting him to simple, routine, repetitive tasks in an environment that does not require on-going interaction with the public. The ALJ explicitly states that that finding is "supported by claimant's back disorders; osteoarthritis; left shoulder impingement; borderline intellectual functioning; affective disorder; anxiety disorder; and chronic planter fasciitis." (Tr. 24-25.) Further, in analyzing Sims's residual functional capacity, the ALJ also discussed Sims's medical records at length, including physical and mental findings and diagnostic images and testing

_____

[4] Listing 1.04 provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.



results, as well as his testimony, and addressed conflicts in the records. (Tr. 20-25.) The ALJ also stated that Sims "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (Tr. 17.) Further, inherent in Listing 12.05(C) is a requirement that the ALJ consider Sims's other impairments, as it requires that a claimant demonstrate "a physical or other mental impairment imposing an additional and significant work related limitation of function" to meet the Listing. For these reasons, the court finds the ALJ's analysis sufficiently demonstrates that he considered the combined effect of Sims's combined impairments. See Brown v. Astrue, C/A No. 0:10-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012) (finding that Fourth Circuit precedent issued after Walker suggested that Walker was not meant to be used as a trap for the Commissioner).

**B.     Credibility**

Finally, Sims argues that the ALJ erred in evaluating his subjective complaints. In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter only the second step is at issue,[5] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

---

[5] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and

persistence of pain or other symptoms may not be disregarded *solely* because they are not

substantiated by objective medical evidence." Id. (emphasis added).  "This is not to say, however,

that objective medical evidence and other objective evidence are not crucial to evaluating the

intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work."

Craig, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the extent they

are inconsistent with the available evidence, including objective evidence of the underlying

impairment, and the extent to which that impairment can reasonably be expected to cause the

[symptoms] the claimant alleges she suffers." Id.  The social security regulations inform claimants

that in evaluating subjective complaints, the Commissioner will consider the following relevant

factors:

> (i)    Your daily activities;
> (ii)   The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii)  Precipitating and aggravating factors;
> (iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi)   Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ observed that at the hearing Sims testified that

he lives with his wife and four children, aged 15, 12, 8, and 2 years old.  His daughter
does the laundry, and his wife is disabled.  He has a driver's license with no
restrictions, but he rarely drives.  He has his GED, can read and write in English, is
left handed, 5'8" tall, and weighs 182 pounds.  He has not worked since February
2009, when he pulled a disc in his back, he has not received workers compensation



or unemployment benefits, and he has not looked for work since that date. He was 28 years old when he got his driver's license. He has problems every day walking and getting around, and does not sleep well. He has pain in his lower back and leg, neck pain, and tendonitis in his arms and hands. His pain is 9 out of 10. Sitting on hard furniture is painful; he can sit for maybe 15-20 minutes. Dr. [Lembo] said he was not capable of working because of the pain and agony caused by standing, and told him not to lift more than 20 pounds. He takes tramadol, Lipitor, and depression medication; and does not have any side effects from his medication. His medications calm and relax him. He has problems with memory and depression. He has not been hospitalized for his emotional or mental problems. In the morning, he gets up, drinks coffee, listens to the radio, eats breakfast fixed by his wife, and read[s] the paper. His wife prepares his lunch, and in the afternoon, he rests and takes it easy. He snacks in the afternoon, and rarely eats in the evening. At night, he takes a shower and goes to bed between 9 and 10 pm, but does not sleep through the night because of the pain. He has a blood disorder that causes his nerves to react. He has to sit up to sleep. He can handle his own bathing and dressing, but his wife helps him with his shoes. He microwaves food, and his children do the cleaning around the house. He goes to the store with his wife. He does not have any hobbies, but does read books on his nook. His sister in law and his nephew visit, and he goes to church about once a month. He can sit for 15-20 minutes, and he can carry 10 to 15 pounds. He has lower back pain that shoots into his legs and left shoulder pain that limits his ability to lift his arms. He has tendonitis in his right hand and arm, and wears a brace to keep his fingers from tightening up. He stands up around 10 minutes a day. He has an ankle brace on his right foot and a back brace. He has problems with both knees, but his right knee is worse. He has problems with memory and is forgetful. He has sleep apnea. Some of his medications cause him to be drowsy and sleepy during the day. He takes a two-hour nap in the morning and in the afternoon every day. Some days are better than others, and the weather is a factor. When it is cold and rainy, he will just stay in bed.

(Tr. 20.)

The ALJ found that Sims's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not credible. In support of this finding, the ALJ first explained that Sims's "subjective complaints to his physicians, the objective findings documented in his medical records, and the treatment he has required do not support a finding that his severe impairments prevent him from performing all work." (Id.) The ALJ observed that despite an alleged onset date of February 27, 2009, the first medical evidence of record is a May 28, 2009 consultative examination for the purposes of disability and that Sims did not seek treatment for his impairments



until March 2010. The ALJ proceeded to summarize the medical evidence, including Sims's reports; the doctor's findings and treatment; and findings from Sims's MRI of the brain, EEG, and PSG to determine his memory loss and possible obstructive sleep apnea; x-rays of his left hip, his left knee, his left shoulder, and his pelvis; Sims's MRI of his lumbar spine; and an electrodiagnostic consultation. Importantly, the records indicate that, with treatment, many of Sims's impairments were stable and that Sims reported improvement and indicated that the medications and injections were helping. For example, the ALJ observed that one doctor noted that Sims's arthritis was stable with treatment consisting of naproxen and ultracet; that Sims reported he was doing a lot better with his memory loss and difficulty finding words with Celexa; that Sims reported his medication was helping him, he was happy with his dosages, and that his CPAP machine was allowing him to sleep at least four hours every night; that he experienced marked improvement and of his back and leg pain with epidural injections and improvement in his shoulder from a subaromial joint injection; and that Sims seemed to be doing quite well taking tramadol intermittently and flexor patches. When discussing a medical record indicating that Sims sought treatment after he experienced increased pain and spasms in his back when he was doing yard work, the ALJ observed that the ability to do yard work is inconsistent with his subjective complaints of disabling pain. Finally, the ALJ observed that the lack of any treatment notes in the record after October 2011.

The ALJ determined that although the medical records do not reveal that his impairments are disabling, the ALJ gave Sims "the benefit of the doubt that these conditions do impose some limitations." (Tr. 24.) In sum, the ALJ stated that "due to the claimant's extensive activities of daily living, lack of medical evidence, and inconsistencies in the record, the undersigned cannot find the claimant's allegations that he is incapable of all work activity to be fully credible." (Tr. 25.)

Sims challenges some of the reasons offered by the ALJ to discount his credibility. As an initial matter, prior to summarizing Sims's testimony, the ALJ stated that

> [t]he claimant's activities of daily living are inconsistent with his allegations of such significant functional limitations, but are fully consistent with the residual functional capacity described above. The claimant can drive a car, dress himself, perform some household chores such as, sweeping, washing dishes, and preparing meals. Although he cannot do any heavy lifting, he is able to do some yard work such as raking leaves. He also stated that he goes to church on occasion, watches television and visits with his family.

(Tr. 19-20.) Sims argues that he is unable to locate any indication in the record or from his testimony that he can sweep, wash dishes, or prepare meals. The only references the court can glean from the record are a consultative examiner's opinion that Sims has the ability to "prepare simple meals[] and perform light chores without specific limitation" (Tr. 244) and Sims's testimony that he very rarely makes something in the microwave for himself. (Tr. 47.) Sims also argues that the one report of yard work in the record resulted in an increase in his symptoms which should support his credibility. Thus, accepting Sims's arguments as true, the remaining daily activity findings consist of Sims's ability to handle his own bathing and grooming, prepare simple meals in the microwave, possess a driver's license but rarely drive, go to church on occasion, and go to the grocery store with his wife.

However, Sims's daily activities were not the only factor that the ALJ considered. The ALJ also found that Sims's allegations were inconsistent with the objective medical evidence, his level of treatment, and his medication, and the ALJ provided specific examples of these inconsistencies. These are appropriate factors to consider under the regulations. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Therefore, Sims's activities were one of several reasons offered by the ALJ to discount his credibility. Moreover, upon review of the record, the court finds that Sims has failed to demonstrate that the ALJ's finding that his remaining activities of daily living were inconsistent with his subjective complaints was unsupported by substantial evidence. See Johnson v. Barnhart,



434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints). Furthermore, even setting aside the ALJ's conclusion with regard to Sims's daily activities, the court nonetheless finds that the ALJ's credibility analysis is within the bounds of substantial evidence.

Upon review of the records as a whole and the parties' briefs, the court finds that Sims has failed to demonstrate that the ALJ's determination that Sims was not entirely credible is unsupported or controlled by an error of law. Although Sims can point to selective medical evidence that may support his allegations of pain, it is clear the ALJ considered this evidence as well. As stated above, it the ALJ's duty to weigh credibility, and the court finds the ALJ's conclusion within the bounds of substantial evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Moreover, the ALJ's decision clearly reflects that he considered the relevant factors in weighing Sims's credibility, one of which is his daily activities. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints). Although Sims's subjective complaints "may not be disregarded solely because they are not substantiated by objective medical evidence," SSR 96-7p, the ALJ properly considered the objective medical evidence and other objective evidence in evaluating Sims's complaints and the extent to which they impair his ability to work. See Craig, 76 F.3d at 595. Therefore, the court finds that Sims has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law. See Hines v. Barnhart, 453 F.3d 559, 565 n.3



(4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); <u>Blalock</u>, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

### RECOMMENDATION

For the foregoing reasons, the court finds that Sims has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  <u>See</u> <u>Craig</u>, 76 F.3d at 589; <u>see</u> <u>also</u> 42 U.S.C. § 405(g); <u>Coffman</u>, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

June 24, 2015
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).